IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD E. JACKSON**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12cv1144 |
| | ) | **Electronic Filing** |
| **ALLIED INTERSTATE, LLC** f/k/a | ) | |
| ALLIED INTERSTATE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION**

Plaintiff commenced this action seeking redress for the alleged violation of his rights under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Plaintiff filed notice of acceptance of defendant's second offer of judgment and the Clerk entered judgment against defendant in the amount of $1,501.00, which was exclusive of fees and costs. Presently before the court is plaintiff's petition for fees and costs in the amount of $5,180.25. For the reasons set forth below, the petition will be granted in part and denied in part and an award will entered in the amount of $5,062.25.

Plaintiff filed his complaint on August 10, 2012, alleging defendant's agents engaged in a six month course of conduct that was aimed at persuading plaintiff to pay a consumer debt in the amount of $327.95. The course of conduct involved numerous tactics which allegedly are prohibited under the FDCPA. These included "continuously and repeatedly contact[ing] Plaintiff on his home and cellular telephones, seeking and demanding a payment of [the] alleged debt." Complaint at ¶ 14. These calls became so voluminous that plaintiff began to keep a log of the calls. Id. at ¶ 15. In ten days in February of 2012 defendant's agents called plaintiff at least 26 times and on certain days called plaintiff's cellular and home telephones more than five times in a twenty-four hour period. Id. at ¶¶ 18-19. Plaintiff instructed defendant's agents to stop calling but they ignored his requests and continued in the course of conduct. Id. at ¶¶ 20-12.

Defendant's agents would let the telephone ring three times, hang up and then call back immediately. Id. at ¶ 22. When plaintiff answered the telephone and defendant's agents engaged in conversation, they would threaten to report the debt to the credit bureaus, garnish plaintiff's wages and take legal action against him. Id. at ¶ 23. These threats were made without the legal authority to pursue such actions and/or without the intent to takes such actions. Id. Defendant sent multiple collection letters, two of which identified different creditors. Id. at ¶ 24. Plaintiff sent a written communication to defendant directing its agents to stop calling him "at home, at work, on my cell or at any other location." Id. at ¶ 25. He also requested validation of the debt. Id. at ¶ 26. Defendant failed to comply with either request. Id. "Defendant had no lawful purpose for acting in the [described] manner . . ., and has engaged in similar conduct as to Plaintiff and other consumers as part of its business model, for the express purpose of increasing revenue." Id. at ¶ 29.

Defendant mounts a wholesale attack on every aspect of plaintiff's fee petition. The attack is founded on the general proposition that plaintiff's counsel runs a "volume shop that files thousands of FDCPA cases a year" and in doing so has targeted defendant on the firm's website as a repeated and flagrant violator of the FDCPA. This action purportedly is like many others and reflects nothing more than the generation of a lawsuit on a cookie-cutter assembly line that utilizes cut-and-paste rehashes of work from prior cases to generate exorbitant fees. Against this backdrop defendant asserts that "this action was ultimately resolved for nuisance value" and maintains that both the hourly rates and the amount of time expended are unreasonable under the circumstances. It repeatedly advocates for drastic reductions in all aspects of the requested fees.

Specifically, defendant asserts that plaintiff's counsel seeks to recover hourly rates that are excessive and not in line with local market rates. Counsel purportedly has undertaken to generate fees based on claimed time when in reality many if not all of the filings are "cut-and-

2

paste" submissions that are recycled from prior cases. These submissions required very little editing or tailoring to fit the matter at hand. Counsel also responded to defendant's answer by engaging in premature motions practice, i.e., filing a needless motion to strike defendant's affirmative defenses. It likewise seeks to collect for an unreasonable amount of work devoted to pursuing "fees-on-fees" pursuant to a generic fee petition that has been used in numerous cases nationwide. The claimed entries also seek to recover attorneys fees for administrative, non-legal tasks such as reading the court's electronic notices and orders on such matters as preparing for the initial Rule 16 conference, the court's mandatory ADR program, the court's case management order and so forth. Similarly, plaintiff's counsel have time entries for reading and writing emails as part of communication and task assignment among themselves and paralegals, which includes time by a paralegal preparing "form documents" for filing. Defendant maintains that all of these argued improprieties reveal a course of conduct that warrants the scrutiny of each entry for which plaintiff's counsel seeks to collect to determine if it represents a reasonable fee or cost that should be passed on to defendant.

Plaintiff maintains that the fee petition seeks to recover a reasonable fee for a judgment premised on an admitted violation of federal public policy. He argues that "the idea that [] a consumer protection law firm should be penalized because it has represented many distressed consumers against [a] serial violator of consumer rights can only be described as absurd." In this regard recoveries in the area of consumer protection laws such as the Truth in Lending Act, the Fair Credit Reporting Act and the FDCPA generally are not high dollar amounts and the failure to award a reasonable fee essentially would serve to frustrate the public policies Congress sought to establish and maintain by passing these acts and providing for the recovery of fees upon an established violation thereof.

Moreover, plaintiff's counsel argues that the requested hourly rates are reasonable and have been accepted by other courts. These and very similar rates have been approved by numerous courts and defendant has failed to cite any persuasive authority to show they are excessive. Similarly, plaintiff's counsel asserts that even though tasks and submissions are routine and similar within a particular area of practice, counsel nevertheless have an obligation to review and tailor each template to the specifics of the case and the entries of time within the petition reflect only reasonable amounts of time devoted to just such tasks. Communicating, strategizing and assigning tasks by email is part of today's practice and is not improper or an otherwise unreasonable method for attorneys to litigate a matter and administrative tasks have been highlighted and omitted from the fee petition in any event. Plaintiff's counsel posits that review of the actual entries indicates that each billing entry reflects a very modest entry of time for the task performed. For example, the highest single entry is for 36 minutes consumed to edit the 14 page brief submitted in support of the fee petition; the time log was reviewed for privileged information and appropriate redactions/omissions were made in 24 minutes; a motion for filing was prepared in 12 minutes and so forth. And all filings or undertakings were reasonable and appropriate measures when performed. Thus, plaintiff maintains that the petition should be granted and the requested $5,180.25 should be awarded as a reasonable fee.

The traditional "American Rule" provides that the parties are "ordinarily responsible for their own attorney's fees." Truesdell v. Philadelphia Housing Auth., 290 F.3d 159, 163 (3d Cir. 2002). Thus, there is a "general practice of not awarding fees to a prevailing party 'absent explicit statutory authority.'" KeyTronic Corp. v. United States, 511 U.S. 809, 819 (1994) (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 262 (1975)). An exception to the American Rule is established in Section 1692k(a) of the FDCPA, which provides:

(a) Amount of damages

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of –

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; . . . and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. . . .

15 U.S.C. § 1692k(a).

In Hensley v. Eckerhard, 461 U.S. 424 (1983), the Court laid down the general standards governing the "reasonableness" of an award of attorney's fees pursuant to any statutory exception to the American Rule. It explained: "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. This figure is commonly referred to as the "lodestar," or the guiding light in determining attorney fees.

The lodestar approach was pioneered by the United States Court of Appeals for the Third Circuit in Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973), appeal after remand, 540 F.2d 102 (1976), and has "achieved dominance in the federal courts" after the Court's decision in Hensley. Perdue v. Kenny A. ex rel. Winn, __ U.S. __, 130 S. Ct. 1662, 1672 (2010). The burden of establishing the reasonableness of a fee request falls on the plaintiff's counsel. Hensley, 461 U.S. at 437; accord Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001) (the "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and the hourly rates."). "When the applicant for a fee has carried his burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the

reasonable fee to which counsel is entitled." Loughner, 260 F.3d at 178 (quoting Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 564 (1986) (internal quotation omitted)).

In order to meet this burden the plaintiff's counsel must present documentation sufficient to justify the fees. Hensley, 461 U.S. at 433. To enable a meaningful review the fee petitioner must produce adequate billing records that detail how the time was spent in litigating the presented claims. Id. at 437. A fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." Lindy Bros., 487 F.2d at 167. However, "it is not necessary to know the exact number of minutes spent, nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Id.; Pawlak v. Greenawalt, 713 F.2d 972, 978 (3d Cir. 1983) (same).

A fee petition is required to be specific enough to allow the district court "to determine if the hours claimed are reasonable for the work performed." Pawlak, 713 F.2d at 978; Rode v. Dellarciprete, 892 F.2d 1177, 1190 (3d Cir.1990). Where a petitioner's documentation is inadequate a court "may reduce the award accordingly." Hensley, 461 U.S. at 433.

The prevailing party's counsel's failure to maintain records that will enable the reviewing court to calculate a proper award with precision does not preclude an award. Instead, the reliable information is to be taken into account to make a reasonable estimate of the proper division of time. See McKenna v. City of Philadelphia, 582 F.3d 447, 455 (3d Cir. 2009) (quoting Hensley, 461 U.S. at 434-35) (affirming a percentage allocation between successful and unsuccessful claims that were distinct where "[i]n the absence of specific time entries to indicate how the attorneys spent their time on the distinct claims, the Court reasonably used the information available to it to estimate a proper division of time."); Hensley, 461 U.S. at 433-36 (Where

6

documentation is inadequate and/or the petitioning party enjoyed only partial success, the district court is not relieved of its obligation to award a reasonable fee and in doing so it may fashion a reasonable fee based on the reliable information available.); Lanni v. New Jersey, 259 F.3d 146, 151 (3d Cir. 2001) (upholding downward adjustment of twenty-five percent for time spent pursuing unsuccessful claims).

Against this backdrop, defendant's contention that this action was resolved for "nuisance value" and the court should assess plaintiff's entitlement to fees based on that valuation is misplaced. Plaintiff recovered the full amount for a statutory violation and an additional amount for actual damages. To interpret this recovery as "nuisance value" would essentially be mocking Congress's determination about the value of conduct deemed to be in violation of federal public policy and deeming that determination to be nothing more than an annoyance and irritation to the judicial system. We do not take Congress's determinations of public policy quite so lightly.

Moreover, under § 1692k(a), an award of attorney's fees is not a special or discretionary remedy. Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991). Instead, "the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." Id. (citing Jesus v. Banco Popular de Puerto Rico, 918 F.2d 232, 235 (1st Cir.1990)). "Indeed, several courts have required an award of attorney's fees even where violations were so minimal that statutory damages were not warranted." Id. (citing Pipiles v. Credit Bureau of Lockport, 886 F.2d 22, 28 (2d Cir.1989); Emanuel v. American Credit Exchange, 870 F.2d 805, 809 (2d Cir.1989); cf. de Jesus, 918 F.2d at 233-34 (construing the parallel provision of the Truth in Lending Act to mandate a fee award to a prevailing plaintiff)). Although a court retains the discretion to decline to award statutory damages in the case of a single, trivial violation of the Act pursuant to the consideration of certain listed factors, the determination of a reasonable attorney fee is not governed by those

factors but instead is to be determined by the traditional lodestar method sanctioned by Hensley and its progeny. Id.

Defendant's contention that the court should look with extreme circumspect on the portion of plaintiff's petition that seeks to recover for the time spent on preparing the fee petition likewise is misplaced. Strong public policy considerations underlie a prevailing party's entitlement to collect fees, including fees-on-fees. In Hernandez v. Kalinowski, 146 F.3d 196, 200 (3d. Cir 1998), the court affirmed the principle that fees-on-fees properly are awarded under a fee shifting statute in order to prevent the improper erosion of a prevailing party's right to recover a reasonable fee. Recovery for time spent perfecting a fee award is within the intent of Congress to permit compensation for all work which is a necessary predicate to obtaining a reasonable fee for successful claims. Id.; accord Prandini v. Nat'l Tea Co., 585 F.2d 47, 53 (3d Cir. 1978) ("Indeed, courts have consistently held that attorneys may be awarded, under statutory fee authorizations, compensation for the expenses of and time spent litigating the issue of a reasonable fee, i.e., for time spent on the fee application and successful fee appeals."). Recovery for time spent in pursuit of a successful fee promotes the underlying congressional policy behind fee shifting statutes by encouraging attorneys to pursue well-grounded claims seeking to vindicate established congressional policies. Prandini, 585 F.2d at 53 (denial of a fees-on-fees recovery would run counter to "the purpose behind most statutory fee authorizations, viz, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies."). It also serves the salutary purposes of discouraging the creation of further litigation over fees that are rightfully owed merely to avoid paying a fee until ordered to do so and encouraging parties to settle fee disputes without resort to trench warfare. Hernandez, 146 F.3d at 200 (citing Hensley, 461 U.S. at 437 ("A request for attorney's fees

should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.").

Defendant's contention that an across-the-boards reduction should be made for all of counsel's time entries because, for example, the 10 page complaint, the motion to strike, and/or the fee petition are "nearly" identical to similar filings by the firm in other cases is unpersuasive. While defendant briefly highlights the total time it attributes to each of these tasks, it does not identify any particular entry or task that reflects an inordinate amount of time devoted to the identified undertaking. The ethical and procedural obligations governing counsel's submissions to the tribunal mandate that counsel exercise caution and strive for accuracy in presenting each submission into the record. Thus, nothing less than an adequate amount of time devoted to verification, tailoring, and editing of standard templates is required and the practitioners before this court are expected to approach their responsibilities with the care and attention to detail needed to meet those responsibilities.

Defendant has not demonstrated that a significant number of time entries are unreasonably excessive or inordinate. The court has reviewed the entries and finds them in general to be reasonable in relation to the tasks undertaken. Consequently, the general reduction defendant seeks appears to invite this court to error on the side of efficiency for defendant's benefit even if it comes at the cost of promoting inaccuracy in what the court and the opposing party receive from counsel. We fail to see the wisdom in such approach or any merit in defendant's complaints on this score.

In addition to its wholesale attacks, defendant specifically challenges the amount of time devoted to 1) a motion to strike defendant's answer, 2) the time devoted to preparing the fee petition, 3) inter-office communications, 4) reviewing electronic notifications reflecting docket entries and 5) billing for menial and administrative tasks. With the exception of the motion to

strike, the record indicates that plaintiff's counsels' time entries reflect reasonable amounts of time being devoted to a reasonable task in furthering or resolving the litigation.

The reasonable use of time has long been a central inquiry in the analysis of a fee petition and a matter that is subject to scrutiny by one's opponent and review by the court. See e.g. Hensley, 461 U.S. at 433 ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); Rode, 892 F.2d at 1190 (fee petitions should include definite information as to the hours devoted to the various general activities undertaken and must be specific enough to allow the court to determine if the hours claimed are reasonable for the work performed). The calculation is an objective one that seeks to make an initial estimate of the value of a lawyer's services. Hensley, 461 U.S. at 433. It is designed to be "readily administrable", produce "objective" results, and permit meaningful judicial review. Perdue, 130 S. Ct. at 1672.

Defendant's complaints concerning the amount of time devoted to the fee petition are unavailing. Defendant challenges the 2.8 hours devoted to preparing the fee petition and supporting brief as unreasonable. But as noted in plaintiff's counsel's reply brief, the most lengthy billing entry entails 36 minutes for revising a 17 page memorandum of law to include the specific factual and procedural information about the case, additional case law, accuracy as to the amounts of time devoted to specific tasks and so forth. A review of the bill to assure no attorney client privileged communications were being disclosed consumed 24 minutes, preparing the actual motion consumed 14 minutes, and revising four form certifications to fit the specifics of the case took 24 minutes. These entries reflect a sufficient level of efficiency in the tasks being performed. The fee petition and supporting submissions are in large measure a compilation of tasks that pertain to case-specific information and tasks. That this information and the related

tasks are quite similar to those generated in other standard FDCPA cases does not make them repetitive forms that require very little or no edification.[1]

Defendant's challenge to the billing entries reflecting time devoted to reviewing electronic case filing notifications and docket entries similarly is misplaced. First, contrary to defendant's assertion, the fee invoice reflects a number of entries where "ECF" notices were reviewed by Craig Thor Kimmel and the time was "not billed" due to it being an administrative task. See e.g. Entries of August 10, 2012, August 23, 2012, October 5, 2012, and October 12, 2012 (Doc. No. 22-1 at 3-5), and so forth. Second, the ECF notices for which time is submitted reflect either the entry of specific information about/from defendant or the review of this court's orders and the standard practices and procedures that are to guide counsel in fulfilling those orders. The court very much expects counsel to be familiar with its programs, standard practices, case management order and orders scheduling proceedings. Counsel was obligated to understand such orders, programs and practices and explain them to plaintiff, which they did. To suggest that such information should not be reviewed by counsel or cast aside as merely an unimportant administrative task appears at the very least to invite non-compliance and mischief by uninformed counsel. There is no shortage of such behavior and we need not strive to make it more prevalent.

Defendant's assertion that the fee invoice reflects an excessive amount of time for internal email correspondence among counsel/staff and menial tasks is not sufficiently supported in the

---

[1] The fee petition does not reflect the time devoted to plaintiff's reply brief (Doc. No. 25) to defendant's brief in opposition. This reply brief consists of eleven pages that were compiled to respond to each of the specific challenges defendant raised to the fee petition. It was both a necessary predicate to obtaining a reasonable fee for a successful claim and specifically tailored to a pending matter in a manner that was helpful. The time for this brief could not have been included when the petition was submitted and to order further development of the record at this juncture would in all likelihood result in additional submissions that only add to the total resources consumed in litigating this matter. Consequently, a reasonable estimate of three hours will be added to attorney Bennecoff's time for this task.

record.  First, counsel are required to discuss the case, assign tasks among themselves and diligently accomplish those tasks.  Using email correspondence to accomplish this is reasonable.  In addition, the fee invoice has been edited to remove a significant number of entries that primarily reflect administrative tasks.  Further, a review of the entirety of the invoice fails to support defense counsel's assertion that the sheer volume of entries for reading email and menial tasks is excessive and unreasonable.  Thus, specific reductions on these grounds is unwarranted.

      Finally, a substantial reduction will be made to the 2.8 hours used to edit and file the motion to strike.   The time for this motion will not be discounted entirely.  Defendant filed an answer that raised a number of highly questionable defenses and at that time there was no understanding among counsel that the case was close to being resolved.  Under these circumstances counsel cannot be faulted for taking action that was grounded in sound litigation strategy.  Nevertheless, the claimed time for this motion was excessive given that the motion did track almost verbatim the same filing in other cases.  Approximately two pages and a paragraph or two were edited to reflect the facts of this case.  Otherwise, the template for the motion had to be reviewed to assure its accuracy with the matters at hand.  While it appears that the attorney who performed this undertaking may have spent time becoming familiar with the record, such an undertaking is well beyond the review that properly is attributed to preparing the motion.  Consequently, the total time will be reduced by 1.5 hours, thus permitting 1.3 hours for the review, drafting of the particulars for the case and assuring the remaining aspects of the template were accurate.[2]

---

[2] Plaintiff's counsel's billing record also reflects the devotion of 2.5 hours to these same tasks by Caroline Diehl.  Ms. Diehl was a law student at the time and it appears that she likewise used most of the time to become familiar with the case.  This time will be excluded for the same reasons attorney Gentilcore's is being reduced and because Ms. Diehl was not an experienced attorney or paralegal.

Notwithstanding all of the above, the court will make a general reduction of 10% of the permitted time to capture ineffective use of time, the overlap from counsels' discussions and any administrative activities included within the necessary undertakings by counsel. Such a reduction assures that any actual inefficiency, overlap, redundancy, administrative task by counsel and/or menial task is eliminated from the amount properly billed to and collected from defendant.

Once an appropriate number of hours can be determined, "a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." Rode, 892 F.2d at 1183. When determining a reasonable hourly rate the court should "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Id. at 1183.

Plaintiff's counsel request the following rates: Craig Thor Kimmel - $300.00 per hour; Tara L. Patterson - $250.00 per hour; Amy L. Bennecoff - $ 200.00 per hour; Joseph L. Gentilcore - $200.00 per hour; Jason Ryan - $110.00 per hour; and Katelyn Fitti - $110.00 per hour. Attorney Kimmel is a founding partner of the law firm Kimmel and Silverman, P.C., and has over 22 years of experience in representing plaintiffs in consumer-based litigation. Attorney Patterson is an associate with 12 years of legal experience which includes 5 years with the Pennsylvania Governor's Office of General Counsel in the State Police Division and 3 years with that office in the Pennsylvania Board of Probation and Parole as assistant counsel. Attorney Bennecoff is a senior attorney with over 7 years of experience that includes experience in personal injury and medical malpractice, land-lord tenant and bankruptcy as well as 5 years of experience primarily handling FDCPA cases in a significant number of jurisdictions. Attorney Gentilcore is an associate who was hired in January of 2011 as a law clerk and became a

practicing attorney with the firm in October of 2011. Jason Ryan and Katelyn Fitti are both paralegals.

In support of the proposed rates plaintiff's counsel has submitted a declaration from attorney James M. Pietz that was submitted in a class action brought in this district pursuant to the FDCPA. The action was filed in 2008 and the declaration was submitted to Judge Ambrose on November 14, 2008. Attorney Pietz sought an hourly rate of $410.00 and his co-counsel, attorney Jeffery Suher, sought an hourly rate of $350.00. These rate requests were supported by rates awarded in other class action lawsuits in the Middle District and the Eastern District involving consumer protection claims. The awarded hourly rates reflected ranges from $550.00 for partners to $335.00 for associates in one case and $440.00 for partners to $195.00 for associates in another. Also, the National Law Journal Billing Survey reflected general hourly rates in the Pittsburgh market ranging from a high of $790.00 for a partner to a low of $150.00 for an associate.

Plaintiff's counsel also document their success in obtaining their requested rates in the neighboring districts of the Northern District of Ohio and the Middle District of Pennsylvania, and their obtaining hourly rates mainly above those requested in the Eastern District of Pennsylvania and the District of New Jersey. Finally, they note that similar rates have been sought in a Fair Credit Reporting case and civil rights cases in this district and are well within the ranges employed at the law firm representing defendant.

Defendant cites to <u>Conklin v. Pressler & Pressler, LLP</u>, 2012 WL 569384 (D.N.J. Feb. 21, 2012), where Judge Wolfson reduced plaintiff's counsel's requested rates, as support for the proposition that counsel's rates have been reduced on a number of occasions. It also notes that in <u>Zavodnick v. Gordon & Weisberg, P.C.</u>, 2012 WL 2036493 (E.D. Pa. June 6, 2012), the court reduced counsel's requested rates from $425.00 to $290.00 for attorney Kimmel, $300.00 to

$200.00 for attorney Bennecoff, $300.00 to $200.00 for attorney Patterson, and $150.00 to $100.00 for paralegals. Id. at *5-6. Defendant does not cite any cases from the Western District to support its position that the requested rates are excessive when compared to the prevailing rates in the Pittsburgh market.

The hourly rates requested by plaintiff's counsel are reasonable and in line with the prevailing market rates in the Pittsburgh market. Defendant essentially seeks a reduction on the premise that Judge Diamond of the Eastern District reduced the Kimmel Law Firm's requested rates to rates consistent with the rates currently requested by the law firm in this district and the Eastern District historically has commanded a higher hourly rate; therefore, the firm's rates should be significantly reduced in the instant manner. What defendant overlooks is the difference between the rates requested in Zavodnick and the adjusted hourly rates plaintiff's counsel request in this matter. The authority advanced by defendant does not demonstrate with any persuasive force that the requested rates are excessive when compared with the prevailing rates in Pittsburgh. And the information available about the local market rates for the work involved supports plaintiff's counsels' requested rates. We see no basis for a further reduction.[3]

In light of the above, the following amounts will be awarded.

| | | |
|---|---|---|
| Attorney Kimmel: | 6.6 hours @ $300.00 per hour | $1,980.00 |
| Attorney Patterson: | 1.8 hours @ $250.00 per hour | $ 450.00 |
| Attorney Bennecoff: | 3.6 hours @ $200.00 per hour | $ 720.00 |
| Attorney Gentilcore: | 3.2 -1.5 =1.7 hours @ $200.00 per hour | $ 340.00 |

---

[3] Defendant concludes this section of its brief as follows: "[a]ccordingly, this Court should follow the lead established in the numerous Kimmel Firm cases cited above and reduce the firm's claimed hourly rates so that those rates align with other recent fee awards in Kimmel Firm FDCPA cases." The irony in this proposed approach is that it would result in hourly market rates that essentially would be the rates requested: $300.00/290.00 for attorney Kimmel; $250.00/200.00 for attorney Patterson; $200.00/200.00 for attorneys Bennecoff and Gentilcore; and $110.00/100.00 for paralegals Ryan and Fitti.

15

| | | |
|---|---|---|
| Paralegal Fitti: | 7.6 hours @ $110.00 per hour | $ 836.00 |
| Paralegal Ryan: | .4 hours @ $110.00 per hour | $ 44.00 |
| Total: | | $4,370.00 |
| Less 10 percent reduction | | ($437.00) |
| Adjusted Total: | | $3,933.00 |

In addition, costs in the amount of $529.25 and 3 hours for attorney Bennecoff to draft the reply brief in support of the petition for fees will be awarded. This results in an award of $4,533.00 in attorneys fees and $529.25 in costs, for a total award of $5,062.25 (($3,933.00 + $529.25 + $600.00 = $5,062.25).[4]

For the reasons set forth above, plaintiff's petition will be granted in part and an award will be entered in the amount of $5,062.25. An appropriate order will follow.

Date: August 5, 2013

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:  Craig T. Kimmel, Esquire
Thomas M. Pohl, Esquire

(*Via CM/ECF Electronic Mail*)

---

[4] The billing for law clerk Lara Dellegrotti has been excluded for the reasons Caroline Diehl's time has been excluded.